652 A.2d 223

ELENA DI GIACOMO AND JOSEPH DI GIACOMO, PLAINTIFFS, v. LOUIS SALADINO AND FRANCES SALADINO, DEFENDANTS, AND ANNA MONTALTO AND VINCENT MONTALTO, DEFEN-DANTS-THIRD-PARTY PLAINTIFFS-RESPONDENTS, v. MER-RIMACK MUTUAL FIRE INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 5, 1995—Decided January 31, 1995.

Before Judges SKILLMAN, WALLACE and KLEINER.

*Moira E. Colquhoun* argued the cause for appellant (*Colquhoun & Colquhoun, P.A.*, attorneys; *Ms. Colquhoun*, of counsel and on the brief).

*Anthony F. Malanga, Jr.* argued the cause for respondents (*Gaccione, Pomaco & Beck,* attorneys; *Mary Beth Petriella,* on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

■ In this appeal by third-party defendant Merrimack Mutual Fire Insurance Company of the grant on cross-motion of summary judgment to third-party plaintiffs, Anna and Vincent Montalto, we are required to determine as a case of first impression, the applicable statutory and regulatory requirements for the cancellation of a homeowner's insurance policy. We conclude that cancellation of homeowner's insurance is governed by *N.J.S.A.* 17:29C–1 and *N.J.A.C.* 11:1–5.2. The motion judge erroneously applied *N.J.A.C.* 11:1–20.1 and relied upon *In the Matter of N.J.A.C. 11:1–20,* 208 *N.J.Super.* 182, 505 *A.*2d 177 (App.Div.1986). Accordingly, we reverse the order granting summary judgment.

On March 21, 1990, plaintiff, Elena DiGiacomo, slipped and fell on steps leading to 205–207 Washington Avenue, Belleville, New Jersey. The residence at 205 Washington Avenue is owned by defendants-third-party plaintiffs Anna and Vincent Montalto (Montalto). The residence at 207 Washington Avenue is owned by defendants Louis and Frances Saladino, who are not involved in this appeal.

Montalto was the named insured on a homeowner's insurance policy issued by Merrimack, effective October 1, 1989. On February 14, 1990, Merrimack informed Montalto by certified mail that the homeowner's policy would be canceled effective March 20, 1990. When Merrimack received the complaint, which was forwarded to it by Montalto, it disclaimed coverage predicated upon the February 14, 1990 notice of cancellation. Montalto instituted a third-party action for declaratory judgment, contending that the notice of cancellation failed to comply with the regulatory provisions of *N.J.A.C.* 11:1–20 *et seq.*

After the issue was joined, Merrimack filed a motion for summary judgment, contending that its notice of cancellation fully complied with *N.J.S.A.* 17:29C–1 and *N.J.A.C.* 11:1–5.2. Montalto filed a cross-motion for summary judgment, contending that the notice of cancellation was ineffective because it failed to comply: (a) with *N.J.A.C.* 11:1–20.1; and (b) with the specific contractual provisions of the insurance policy. The motion judge concluded that Merrimack's notice of cancellation failed to comply with *N.J.A.C.* 11:1–20.1 and therefore granted summary judgment to Montalto. The court did not address the second issue raised by Montalto, which asserted a breach of the insurance contract.

I

"Prior to September 1985, few executive, legislative, or judicial pronouncements discussed mid-term insurance cancellation on grounds other than non-payment of premium or fraud." *Harvester Chemical Corp. v. Aetna Casualty & Sur. Co.*, 277 *N.J.Super.* 421, 427, 649 *A.*2d 1296 (App.Div.1994). On September 16, 1985, *N.J.A.C.* 11:1–20 was adopted on an emergency basis, 17 *N.J.Reg.* 2460, and was readopted without change on November 16, 1985, 17 *N.J.Reg.* 2978. The emergency action was necessary as:

> The Department of Insurance is receiving numerous complaints from both agents and insureds concerning mid-term cancellations, block cancellations and nonrenewals of entire lines of insurance, the failure to provide timely notice of such terminations and mid-term increases in premiums with respect to property and casualty/liability insurance coverages.

[17 *N.J.Reg.* 2460.]

At that time, subchapter 20 was entitled "Cancellation and Nonrenewal of Property and Casualty/Liability Insurance Policies." 17 *N.J.Reg.* 2461. The scope of the regulation read in pertinent part:

> (a) This subchapter shall apply to all property and casualty/liability insurance policies except workers' compensation insurance, accident and health insurance and, to the extent this subchapter may be inconsistent with applicable statutes and regulations, policies covering automobiles as defined at *N.J.S.A.* 39:6A–3.

[17 *N.J.Reg.* 2461.]

In 1985, the Department of Insurance issued Bulletin # 85-1, regarding the interpretation of *N.J.A.C.* 11:1–20 *et seq.* as it then existed. 17 *N.J.Reg.* 2985. The Bulletin states in pertinent part:

> 3. *N.J.A.C.* 11:1–20 does apply to all property and casualty/liability lines, including all personal lines coverages and all surplus lines coverages. The only exceptions are the workers' compensation and accident and health coverages.
>
> [17 *N.J.Reg.* 2985.]

This was an interpretation of the original rule before the procedural and substantive changes.

There were numerous comments concerning the proposed new rule, *N.J.A.C.* 11:1–20, before it was readopted in November 1985. One comment pertained to the various lines and types of insurance that should be excluded from the rule's scope, which included personal lines coverage. The response was:

> A number of the coverages addressed by the comments have been removed from the application of the regulation by emergency amendments to that regulation. These include employer's liability, ocean marine and aviation insurance, fidelity, surety, performance or forgery bonds, and, with certain exceptions, policies of insurance covering multistate locations. With respect to the comment regarding personal lines, complaints received by the Department of Insurance indicate that the types of protections afforded by this rule are necessary and must be extended. However, the Department does recognize that some additional considerations are necessary with respect to personal lines and therefore intends to adopt new regulations specifically tailored to personal lines coverages. *As a result of that determination, the Department has proposed amendments eliminating personal lines from the regulation in order that additional comments may be received and considered by the Department prior to implementing these new regulations.*
>
> [17 *N.J.Reg.* 2980 (emphasis added).]

In March 1986, the Department proposed to repeal *N.J.A.C.* 11:1–20 and to promulgate new rules to be cited as *N.J.A.C.* 11:1–20 and 11:1–22. 18 *N.J.Reg.* 458. This proposal was intended to supercede the proposal published on December 16, 1985, at 17 *N.J.Reg.* 2956(a).

> The scope section of the proposed new rule, *N.J.A.C.* 11:1–20.1, limits the applicability of the regulation to commercial lines coverages and specifically excludes certain commercial lines such as fidelity, surety, performance and forgery bonds, ocean marine and aviation insurance, workers' compensation and employer's liability insurance and surplus lines policies. These lines are also excluded from the scope of the existing regulation. However, the proposed new *N.J.A.C.* 11:1–20.1 with certain exceptions, also removes from the rule's scope policies covering

multistate location risks if such risks do not have their principal headquarters in New Jersey and policies subject to retrospective rating plans. *The proposed new scope section would additionally remove the applicability of this subchapter to personal lines coverages, such as homeowners insurance.*

[*Ibid.* (emphasis added).]

The Department found that there would be no negative social impact in deleting the personal lines from this subchapter since it intended to "promulgate regulations specifically tailored to such lines." 18 *N.J.Reg.* 459. Additionally, it commented that "[i]n general, personal lines have not experienced availability problems comparable to those found in the commercial market." *Ibid.*

The new rules were adopted on June 16, 1986 and became effective on July 7, 1986. 18 *N.J.Reg.* 1388. In conjunction with the repeal of the original rule, the title was changed to "Cancellation and Nonrenewal of Commercial Insurance Policies," and the scope section of the new rule reads in pertinent part:

(a) This subchapter shall apply to all commercial insurance policies which are in force, issued or renewed on or after the effective date of this subchapter by companies licensed to do business in this state except workers' compensation insurance, employers' liability, fidelity, surety, performance and forgery bonds, ocean marine and aviation insurance and accident and health insurance and any policy written by a surplus lines insurer. With the exception of *N.J.A.C.* 11:1–20.3 and 11:1–20.4(d), this subchapter shall not be applicable to multi-state location risks which do not have their principal headquarters in the state or policies subject to retrospective rating plans.

[18 *N.J.Reg.* 1392.]

On November 17, 1987, there was an amendment to the new rule which deleted the phrase "which do not have their principal headquarters in this [sic] state." 18 *N.J.Reg.* 2302. The amendment became effective on February 17, 1987. *N.J.A.C.* 11:1–20.1. On May 16, 1988, subchapter 20 was proposed for readoption and subsequently adopted. 20 *N.J.Reg.* 1061.

It is apparent from the administrative history that subchapter 20 as it now reads was not intended to apply to homeowners' insurance policies. By March 1986, it was the intention of the Department to remove personal lines coverage, which include homeowners' policies, from its scope. The new rule was clearly

proposed and adopted with substantive and procedural changes, as well as a title change, which reflect the Department's intent.

The motion judge's reliance on *In the Matter of N.J.A.C. 11:1–20, supra,* was misplaced. In that matter, the court was only construing the action of the Commissioner of Insurance taken on an emergency basis, and the court specifically indicated that it would decide the case without considering any changes in the administrative rule, *N.J.A.C.* 11:1–20, after November 16, 1985. *In the Matter of N.J.A.C. 11:1–20, supra,* 208 *N.J.Super.* at 193, 505 *A.*2d 177. The court also noted that as of the date of its decision, "significant amendments to *N.J.A.C.* 11:1–20 and a new regulation, *N.J.A.C.* 11:1–22 were proposed, ... which will remove personal lines coverage from the rule...." *Ibid.*

Montalto contends that as the Department of Insurance noted its intent to adopt new regulations applicable to personal lines coverage and failed to do so, it is not reasonable to interpret subchapter 20 as excluding homeowners' policies. We disagree. The administrative history of the regulation clearly shows an intent to exclude homeowners' insurance policies, and it is therefore reasonable to interpret the regulation in accordance with the expressed intent.

We conclude that cancellation of a homeowner's insurance policy is governed by *N.J.S.A.* 17:29C–1, the enabling statute for *N.J.A.C.* 11:1–5.2, "Notice of cancellation and nonrenewal of fire and casualty coverage," which states in part:

> (a) All fire and casualty policies of insurance, except accident and health policies, shall provide for the issuing company to give:
>
> 1. Thirty days' written notice to the insured of the cancellation of any policy;
>
> 2. Thirty days' written notice of cancellation of any policy to any mortgagee mentioned in said policy....
>
> [*Ibid.*]

Since the record is absolutely clear that Montalto received thirty days' notice of the cancellation of this policy, defendant fully

complied with the statutory and regulatory requirements for cancellation.[1]

## II

On appeal, Merrimack also contends that the court erred in denying its motion for summary judgment. We note that Montalto asserted in response to the motion a contention that Merrimack breached the terms of its insurance contract. The policy as issued contain the following provisions:

5. Cancellation.

. . . .

    b.  We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

. . . .

. . . .

. . . .

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy: or

(b) if the risk has changed substantially since the policy was issued. This can be done by letting you know at least 30 days before the date cancellation takes effect.

In this case, the policy was in effect for more than sixty days. The notice of cancellation indicated that the reason for cancellation was simply "increase in hazard." The pleadings filed in conjunction with the motion and cross-motion for summary judgment clearly reflect that Montalto contends that there was not in fact "any increase in hazard."

In *Harvester, supra,* in discussing a similar issue but in the context of the cancellation of a commercial general liability insurance policy, we concluded that an issue for determination is

---

[1] In view of our conclusion that *N.J.A.C.* 11:1–20.1 is inapplicable to homeowners' insurance cancellations, we need not discuss Montalto's contention that the notice of cancellation failed to comply with *N.J.A.C.* 11.1–20.2(g) and (h).

whether the insurer had, "an objective, reasonable ground for the cancellation notice that was sent during the policy term." *Harvester, supra,* 277 *N.J.Super.* at 432, 649 *A.*2d 1296. Applying that principle, it is clear that from the pleadings as filed, that a factual inquiry is required to determine whether Merrimack had an objective, reasonable ground for its conclusion that there was an "an increase in hazard."

We note that although Montalto's pleadings before the motion judge addressed the issue decided in *Harvester, supra,* those pleadings fail to address whether Montalto's silence between February 14, 1990, upon his receipt of the notice of cancellation and March 20, 1990, the date of cancellation, may bar his claim that defendant breached the contractual cancellation provision of the insurance policy.

The motion judge was not compelled to address these issues, as he focused solely upon the applicability of *N.J.A.C.* 11:1–20.1. The unaddressed issues may be revisited in future proceedings before the trial court.

The order granting summary judgment to defendant-third-party plaintiff is reversed.